Knoll Lowney, WSBA #23457
Alyssa Englebrecht, WSBA #46773
Meredith Crafton, WSBA #46558
Marc Zemel, WSBA #44325
Savannah Rose, WBSA #57062
SMITH & LOWNEY, PLLC
2317 E John Street
Seattle, WA 98112
(206) 860-2883

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN ECHARD, *on behalf of himself and all others similarly situated*,<br><br>           Plaintiffs,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., and WELLS FARGO & CO.,<br><br>           Defendants | COMPLAINT – CLASS ACTION<br><br>JURY DEMAND |

Plaintiff Brian Echard, individually and on behalf of all others similarly situated, hereby files this class action complaint against Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo & Co ("WFC") (collectively, "Wells Fargo" or "Defendants"). Plaintiff makes the allegations herein upon personal knowledge as to himself and his own acts, and upon information and belief and based upon investigation of counsel as to all other matters, as set forth herein.

## I.     INTRODUCTION

1.     Throughout our nation's history, members of our military services have been asked to make many sacrifices for our nation. These American heroes leave family, friends and the comforts of civilian life to answer our country's call to duty. Many also leave behind

employment, a career, and financial security. For some the sacrifices go much further and can cause lasting or permanent impacts on the servicemembers and their families.

2.    In return for these sacrifices, our nation provides veterans certain ongoing benefits and protections. One important benefit is that servicemembers and veterans can obtain assistance in securing a mortgage to buy a home through a Veterans Administration ("VA") guaranteed loan.

3.    The VA loan program goes beyond assistance in obtaining a loan. It also provides veterans with protections and assistance throughout the period of the loan. These protections are guaranteed by statutes, regulations, and detailed guidance provided by the VA.

4.    In addition to the protections guaranteed by law, military home borrowers have a reasonable expectation of even greater care from mortgage lenders and servicers like Wells Fargo. Wells Fargo, like other lenders, promises to go further in assisting military borrowers to overcome bumps in the road that could otherwise lead to foreclosure or other harms. The bank promises to provide military home borrowers with a "dedicated team" of financial professionals and "expanded mortgage benefits that go beyond what the SCRA requires,"[1] including "mortgage assistance to those who can't keep up with payments."[2]

5.    In 2020, through no fault of their own, military borrowers throughout the nation were faced with financial hardship because of the COVID-19 pandemic. This was a time when these American heroes needed Wells Fargo to provide the "dedicated team," "dedicated attention" and "support" it promised.

_____

[1] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited January 28, 2021).
[2] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited January 28, 2021).

COMPLAINT – CLASS ACTIONJURY DEMAND - 2

6.      Instead of living up to its obligation to military borrowers under the law and the bank's promises, Wells Fargo found a way to profit off these military borrowers by wrongfully enrolling them into a forbearance program without their informed and legal consent that would only increase their financial hardship.

7.      Wells Fargo's "forbearance scam" harmed military and non-military customers across the nation, but the fraud against military borrowers is distinct and particularly egregious because they are entitled to special protections under federal law, numerous state laws, and under Wells Fargo's explicit and implicit promises to support and protect these customers.

8.      As described herein, Wells Fargo twisted a national crisis and a government relief program into a way to make profit at the expense of its military and nonmilitary customers. As a result of the COVID-19 outbreak, Congress passed the Coronavirus Aid, Relief and Economic Security ("CARES") Act in March 2020, which among other things, provides relief to millions of Americans who are struggling to pay their mortgage payment as a result of the economic difficulties caused by the pandemic.

9.      In part, the CARES Act instructed mortgagees and servicers to create mortgage forbearance provisions for all federally-backed mortgages. The CARES Act makes clear that participating in a COVID-19 mortgage forbearance program is entirely voluntary; that is, a mortgagor must be informed of the various terms and conditions of the program and then affirmatively decide to enter the program.

10.     Congress intentionally included a volitional act on the part of the mortgagor to opt into forbearance. This is because mortgage forbearance has serious consequences for homeowners, including an inability to obtain additional credit and/or to finance any existing loans.

11.    Per the Consumer Financial Protection Bureau ("CFPB"), before a bank servicing a loan can grant forbearance, it must receive a request for such relief and an attestation of a COVID-19-related financial hardship from the borrower.

> REQUIREMENTS FOR SERVICERS.— (1) IN GENERAL.— ***Upon receiving a request for forbearance from a borrower under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID–19 emergency*** and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provide the forbearance for up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of forbearance may be shortened.[3]

12.    Wells Fargo has unilaterally, without informed and legal consent, and without requesting or receiving any financial hardship attestation, opted unwitting borrowers into its COVID-19 mortgage forbearance program.

13.    Additionally, when borrowers logged onto Wells Fargo's website to view their accounts, the webpage included a link at which borrowers could obtain information regarding Wells Fargo's COVID-19 relief program. Upon the click of a button which made no mention of forbearance, unsuspecting borrowers' accounts were placed into forbearance without their informed knowledge or consent.

14.    Many Wells Fargo mortgage customers who were placed into Wells Fargo's COVID-19 mortgage forbearance program received no notice that Wells Fargo had placed their mortgages into forbearance. Some borrowers only found out (if at all) when they attempted to

---

[3] https://www.congress.gov/116/bills/hr748/BILLS-116hr748enr.pdf (last visited January 27, 2021) (emphasis added).

COMPLAINT – CLASS ACTION|JURY DEMAND - 4

apply for credit, including for refinancing of their mortgage, and were denied, then learning from the credit report that their mortgage loans were in forbearance. Others found out when they attempted, but were unable, to make regularly scheduled mortgage payments with Wells Fargo.

15.     When Wells Fargo did send their customers a template notice informing them that Wells Fargo had placed their loans into forbearance, the notice was both insufficient and inaccurate.

16.     Furthermore, after illegally placing customers' accounts into forbearance, Wells Fargo perpetuated the problems for these customers by failing to properly apply payments that had been made to the mortgage, failing to properly report payments actually made to credit agencies, and failing to provide accurate and legally sufficient periodic statements to these customers.

17.     For military borrowers, this scam is even more indefensible. Wells Fargo had promised to provide military borrowers with "support," including a "dedicated team" of financial advisers. Yet, rather than providing any of those services when they were needed, Wells Fargo ran the same scam on the military customers.

18.     In addition, these military customers had additional legal rights available to them to address financial difficulties. But Wells Fargo never disclosed any of those protections or rights to the military customers before enrolling them into the forbearance program.

19.     As a result of being placed into forbearance, these homeowners, including Plaintiff and the putative class, suffered damages including but not limited to an inability to access credit to finance to lower interest rates, which is especially egregious during this time in which mortgage interest refinance rates are historically low. They also must deal with the difficult situation of removing their mortgages from a program they did not want.

1    20.    Interest rates are at all-time lows, and many homeowners are seeking to take

2    advantage of these historically low rates by refinancing. If an account is placed into forbearance,

3    those borrowers cannot typically refinance for many months, if not years, even after bringing the

4    account current.

5    21.    This forbearance scam profited Wells Fargo in a number of ways, including

6    because the bank receives additional compensation for each loan placed in forbearance.  In

7    addition, Wells Fargo directly profits from its customers inability to refinance – the harm

8    inflicted on the customers – because this allows Wells Fargo to retain these mortgages at above-

9    market rates.  These customers are damaged, and Wells Fargo profits, by the difference between

10   the lifetime costs of their over-market mortgage and the mortgage that they would have been

11   entitled to if they had not been wrongfully placed in forbearance.

12   22.    Wells Fargo has not denied many of these core allegations, stating via its

13   spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have

14   misinterpreted customers' intentions in a small number of cases."[4] Although Wells Fargo did not

15   identify the complete number of borrowers who were unwillingly placed into its forbearance

16   program, it reported having received 1,600 complaints of unwanted forbearances.[5]

17   **II.    JURISDICTION AND VENUE**

18   23.    Plaintiffs invoke the jurisdiction of this Court pursuant to the Truth in Lending

19   Act ("TILA"), 15 U.S.C. § 1601; the Real Estate Settlement Procedures Act ("RESPA"), 12

20   U.S.C. § 22601; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681; and the

21

22

─────────────────────────

23   [4] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited January 27, 2021).

24   [5] https://www.nbcnews.com/business/personal-finance/1-600-customers-say-wells-fargo-paused-their-mortgage-payments-n1241620 (last visited January 27, 2021).

1  Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. §§ 3901 *et seq.* (formerly 50 U.S.C. App.

2  §§ 501 *et seq.*).

3        24.    In addition, this Court has original jurisdiction pursuant to the Class Action

4  Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), because the aggregate claims of the proposed class

5  members exceed $5,000,000, and at least one Class member resides in a different state than

6  Defendants.

7        25.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's

8  common law claims and state law claims because those claims are so related to the claims within

9  the Court's original jurisdiction that they form a part of the same case or controversy under

10  Article 3 of the U.S. Constitution.

11        26.    This Court has personal jurisdiction over Defendants, as they purposefully availed

12  themselves of the privilege of conducting activities in Washington and established minimum

13  contacts sufficient to confer jurisdiction. Defendants conduct business activities which are the

14  subject of the present complaint in Washington.

15        27.    Venue is proper in this Court, as Defendants conduct business within the district,

16  and some business activities which are the subject of this complaint occurred therein.

17                           **III.    PARTIES**

18        28.    Plaintiff Brian Echard is a resident of Westerville, Ohio,

19        29.    Plaintiff's mortgage is serviced by Wells Fargo.

20        30.    Defendant Wells Fargo & Co. ("WFC") is a diversified financial services

21  company that provides banking, insurance, investments, mortgage banking, and consumer

22  finance through banking stores, the internet, and other distribution channels to customers,

23  businesses, and other institutions in all 50 states and in other countries.

24        31.    Defendant WFC is the parent corporation of Defendant Wells Fargo Bank, N.A.

32.     Wells Fargo Bank, N.A. ("Wells Fargo Bank") is a national banking association which conducts mortgage servicing operations through its Wells Fargo Home Mortgage division, which is headquartered in Des Moines, Iowa.

33.     Upon information and belief, WFC exercises specific and financial control over the operations of Wells Fargo Bank, N.A., dictates the policies, procedures, and practices of Defendant Wells Fargo Bank, N.A., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein.

## IV.     FACTUAL ALLEGATIONS

**A.     Wells Fargo provides special programs and promises to military borrowers.**

34.     Wells Fargo, like many banks and lenders, competes for the business of military borrowers by promising support, dedicated services, and protections beyond those required by law.

35.     Wells Fargo claims to be "Committed to our Military Veterans" and that it has been "Proudly supporting military veterans and their families for more than 160 years."[6] But it makes its strongest promises to military home borrowers:

> ***It's our honor to serve you – every step of the way***
> You've served our country - and Wells Fargo is committed to serving you. Our goal is to enable long-lasting, sustainable homeownership, provide home financing education and support you with career transition.[7]

---

[6] https://www.wellsfargo.com/military/veterans/ (last visited January 28, 2021).
[7] https://www.benefits-mortgage.com/loans/mil0307/index-affinity.page?_ga=2.28828095.286286478.1611800248-1619906565.1611800248 (last visited January 28, 2021).

COMPLAINT – CLASS ACTIONJURY DEMAND - 8

36.    Wells Fargo maintains a website dedicated to wooing military borrowers into its mortgage programs, promising to provide "Dedicated attention. Specialized services." It claims "We appreciate the dedication of our nation's military personnel and their families. We are committed to providing home financing options to meet the unique needs of the military and veteran community."[8] The bank promises:

**A dedicated team – just for you.**  We have a team of financial professionals who've been specially trained to meet your specific needs.  Their understanding of military and veteran culture makes them uniquely qualified to help you achieve your homeownership goals.

That dedicated webpage also promises:

**Help for military personnel**

Active-duty service members and their families facing payment challenges may qualify for special military benefits.

37.    In addition, Wells Fargo states that it promises to provide military borrowers with protections that goes beyond those required by law: "The Servicemembers Civil Relief Act (SCRA) may offer protection or relief to members of the military, their spouses, partners, and dependents. Wells Fargo appreciates the service of America's military personnel. That's why we offer expanded mortgage benefits that go beyond what the SCRA requires."[9] These include:

**Expanded benefits**

In addition to the benefits offered under SCRA, Wells Fargo helps service members by:

- Providing mortgage assistance to those who can't keep up with payments.
- Applying foreclosure protection if service members are deployed in a hazardous area or deployed internationally in readiness for military action.[10]

---

[8] https://www.benefits-mortgage.com/loans/mil0307/loan-programs/military-loans.page (last visited January 28, 2021).
[9] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited January 28, 2021).
[10] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited January 28, 2021).

38.    Wells Fargo tells military customers that it has "home financing specialists" that are "here to support" military borrowers. It maintains a "Wells Fargo Military Bank Center."[11] Additionally, Wells Fargo's military website states, "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you."[12] Defendants touted themselves as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

**B.    Military borrowers are entitled to special legal protections.**

39.    C.F.R. § 38.4300-93 and the VA Servicer Handbook,[13] which is a handbook provided to servicers by the VA itself, provide special legal protections to military borrowers with a VA-backed loan. Servicers owe these borrowers a higher duty of care and disclosure, which include but are not limited to specific methods of keeping borrowers informed, quality control procedures, avoiding foreclosure whenever possible, explaining all loss mitigation options, continuing loss mitigation throughout the foreclosure process, exhausting all loss mitigation efforts before foreclosure, not allowing the final payment to be more than twice the amount of the preceding installments, providing special options to borrowers in distress as the result of a disaster, the right to prepay, and allowing prepayments to be reapplied to prevent subsequent default.

40.    The VA also provides requires loan servicers to give special protections to military borrowers with a VA-backed loan under the CARES Act. The VA requires that "servicers are not to require a borrower who receives a CARES Act forbearance to make a lump

---

[11] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military (last visited January 28, 2021).
[12] https://www.wellsfargo.com/military (last visited January 28, 2021).
[13] Available at https://www.benefits.va.gov/WARMS/M26_4.asp (last visited January 28, 2021).

sum payment, equating to what would have been due if a forbearance was not in effect, after the forbearance period ends." Veterans Benefits Administration Department of Veterans Affairs, Circular 26-20-33, (Sept. 14, 2020).[14] The VA also requires that servicers not modify the existing loan to apply a deferment. *Id*

41.      Under the SCRA, servicemembers are entitled to a year of mortgage protection after returning from active duty, regardless of whether the servicemember notified the mortgage lender or servicer of their military status. 50 U.S.C. § 3953(c).

42.      Moreover, the VA provides financial counseling to help veterans and military borrowers with a VA loan.  As the VA website explains:

> **Can I get VA financial counseling to help avoid foreclosure?**
>
> ▪ **If you're a Veteran or the surviving spouse of a Veteran,** we'll provide financial counseling—even if your loan isn't a VA direct or VA-backed loan
>
> ▪ **If you have a VA direct or VA-backed loan,** you can contact us anytime to request that we assign a VA loan technician to your loan. Our technicians can offer you financial counseling and help you deal with your servicer (or work with you directly in the case of a VA direct loan).[15]

## C.      The CARES Act

43.      In response the COVID-19 outbreak, on March 27, 2020, Congress passed the CARES Act. A component of the CARES act aid package was designed to assist American homeowners with federally backed mortgages who were in distress as a result of the COVID-19 pandemic.

---

[14] Available at https://www.benefits.va.gov/HOMELOANS/documents/circulars/26_20_33.pdf (last visited January 28, 2021).
[15] https://www.va.gov/housing-assistance/home-loans/trouble-making-payments/ (last visited January 28, 2021).

44.     Amongst other things, the CARES Act provided homeowners with Government Sponsored Enterprises ("GSE") loans experiencing financial hardships because of COVID-19 with the option to request up to 180 days of forbearance on their mortgage. Specifically, Section 4022(b) provides in relevant part that:

> (1) IN GENERAL.—During the covered period [beginning February 15, 2020 and ending on June 30, 2020], a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID-19 emergency *may request* forbearance on the Federally backed mortgage loan, regardless of delinquency status, by—
> > (A) submitting a request to the borrower's servicer and
> > (B) affirming that the borrower is experiencing a financial hardship during the COVID-19 emergency.
>
> (2) DURATION OF FORBEARANCE.— ***Upon a request by a borrower for forbearance*** under paragraph (1), such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days ***at the request of the borrower***, provided that, ***at the borrower's request***, either the initial or extended period of forbearance may be shortened.

*See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat. 281, § 4022(b) (emphasis added).

45.     Section 4022(c) of the CARES Act provides in relevant part that:

> ***Upon receiving a request for forbearance from a borrower*** under subsection (b), the servicer shall with no additional documentation required other than the borrower's attestation to a financial hardship caused by the COVID-19 emergency and with no fees, penalties, or interest (beyond the amounts scheduled or calculated as if the borrower made all contractual payments on time and in full under the terms of the mortgage contract) charged to the borrower in connection with the forbearance, provided the forbearance up to 180 days, which may be extended for an additional period of up to 180 days at the request of the borrower, provided that, the borrower's request for an extension is made during the covered period, and, at the borrower's request, either the initial or extended period of

1      forbearance may be shortened.

2  *Id.*, § 4022(c) (emphasis added).

3      46.    The plain language of these provisions makes it abundantly clear that

4  participation in a mortgagee's or servicer's mortgage COVID-19 forbearance program is

5  voluntary and only to be initiated at the request of the mortgagor clients.

6      47.    For mortgagors to avail themselves of the COVID-19 mortgage forbearance

7  option, they were instructed to contact their loan servicer to obtain information and, if

8  appropriate, request forbearance.[16]

9      48.    The CARES Act also provides that lenders are not permitted to report forborne

10  payments to the credit bureaus, which means that borrowers who request forbearance are not

11  supposed to see any impact on their credit scores as a result of their participation in forbearance

12  programs. *See* CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-

13  136, March 27, 2020, 134 Stat. 281, § 4021.

14      49.    Wells Fargo stated publicly in July 2020 that it had deferred 2.5 million payments

15  for consumer and small business customers since the start of the pandemic.[17]

16  **D.    Wells Fargo Unilaterally and/or Without Informed Consent Opted Homeowners
      into its Forbearance Program.**

17
18      50.    Since the passage of the CARES Act, Defendants unilaterally placed borrowers

   into their mortgage forbearance programs without informed or lawfully required consent.
19

20

21

22
                    _____

23  [16] https://www.consumerfinance.gov/coronavirus/mortgage-and-housing-assistance/request-forbearance-or-
   mortgage-relief/ (last visited January 27, 2021).
24  [17] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited January
   27, 2021).

51.     Thousands of homeowners have been put into mortgage forbearance programs they did not knowingly request, causing substantial problems for those homeowners, including preventing homeowners from taking out new home loans or refinancing their existing mortgages.

52.     Wells Fargo's practice of placing unwitting customers into forbearance has prompted hundreds of consumer complaints. For instance, complaints filed with the CFPB have risen dramatically since the beginning of the pandemic, and many of those have come from homeowners who complain that they were placed in forbearance without requesting it.[18]

53.     In particular, as one consumer told the CFPB, a Wells Fargo employee admitted "that the system is like a 'hair trigger'" automatically placing loans into forbearance "even though I did nothing to start a forbearance."[19]

54.     Wells Fargo has not denied these allegations, stating via its spokesperson Tom Goyda that "[i]n the spirit of providing assistance, we may have misinterpreted customers' intentions in a small number of cases."[20]

55.     The actions taken by Defendants were in direct contravention of the CARES Act requirements that forbearances be provided in response to the request of the borrower, and with an attestation of hardship due to COVID-19. In many instances, the borrowers received no notice that they had been placed into forbearance at all, and in those instances where borrowers received some notice, it was woefully inadequate under the requirements of RESPA, 12 U.S.C. §§ 2601 et seq.

_____

[18] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited January 27, 2021).
[19] https://www.consumerfinance.gov/data-research/consumer-complaints/search/detail/3658898 (last visited January 27, 2021).
[20] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited January 27, 2021).

**E.    Wells Fargo Failed to Properly Manage Mortgages Once in Forbearance.**

56.    Wells Fargo's illegal actions went beyond enrolling unwitting customers into its forbearance program. Once customers were wrongfully enrolled into the program, Wells Fargo continued to act negligently and unlawfully by (1) failing to properly apply payments made by customers to the mortgage; (2) failing to properly report payments made by customers to credit agencies; and (3) failing to provide accurate and legally sufficient period statements to these customers.

**F.    Wells Fargo Benefits Financially from its Practice of Unilaterally Opting Homeowners into its Forbearance Program.**

57.    Wells Fargo is compensated financially by the various federal agencies on whose behalf its service borrowers' loans when it filed forbearance notices and when it completes loan retention workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

58.    For every Fannie Mae and Freddie Mac mortgage loan Wells Fargo places into forbearance, Wells Fargo stands to receive a minimum of $500 and up to $1,000 in incentive payments, depending on which workout option Wells Fargo's borrower accepts at the conclusion of the forbearance term.

59.    For Ginnie Mae Loans Wells Fargo places into forbearance, Wells Fargo is also entitled to receive incentive compensation for post-forbearance loan workouts, although the structure for calculating the amount of these incentive payments and the available workout options are different (in immaterial ways) for Ginnie Mae loans, depending on whether the loan was originated by the VA, the USDA, or the FHA.

60.    Wells Fargo's portfolio of Fannie Mae and Freddie Mac loans carries principal and interest payment advance obligations that are similar to its advance obligations for Ginnie

Mae loans, with one important difference specifically applicable to loans in CARES Act forbearance: Wells Fargo's principal and interest advance obligations on Fannie Mae and Freddie Mac loans that received a CARES Act forbearance terminate after Wells Fargo makes four advances of borrowers' missed principal and interest payments.

61.    So long as Fannie Mae and Freddie Mac loans are placed into a CARES Act forbearance, Wells Fargo is not required to repurchase delinquent Fannie Mae and Freddie Mac loans in order to be allowed to cease making principal and interest advances. Instead, after Wells Fargo makes advances for four monthly principal and interest payments missed by the borrower on a loan that Wells Fargo has placed in a CARES Act forbearance, under applicable Fannie Mae and Freddie Mac servicing guidelines, Wells Fargo no longer has any further obligation to advance principal and interest payments on the loan.

62.    Therefore, regardless of whether a loan is backed by Ginnie Mae, Fannie Mae, or Freddie Mac, Wells Fargo benefits from placing loans into CARES Act forbearances by limiting its exposure to principal and interest advance obligations in the event of future defaults.

**G.    Unwanted Forbearance Injures Consumers**

63.    Wells Fargo has engaged in a practice of unilaterally opting mortgagors into unwanted forbearance programs which has caused an injury to those homeowners.[21]

64.    Even if Wells Fargo do not report forborne accounts as delinquent, there are nonetheless many practical and immediate impacts of participating in a mortgage forbearance program; mainly, participation in a forbearance program prohibits homeowners from taking out new loans or refinancing their existing mortgages.

---

[21] https://www.cnn.com/2020/05/20/success/mortgage-forbearance-homeowner-complaints-coronavirus/index.html (last visited January 27, 2021).

COMPLAINT – CLASS ACTION JURY DEMAND - 16

65.    Wells Fargo has made note on the reports they send to credit reporting agencies that the homeowners who they have placed into forbearance – including those who never requested it – have suspended their mortgage payments.[22]

66.    Fannie Mae and Freddie Mac, which, along with the Federal Housing Administration and the Department of Veterans Affairs, fund or insure the vast majority of mortgages from lenders, do not allow borrowers with a loan in forbearance to either refinance or to obtain a new loan until one year after the loan payments are up to date again.

67.    Wells Fargo has also failed to report payments made by borrowers to the credit reporting agencies after those borrowers discover they have been placed into forbearance and commence making payments again.

68.    Some individuals, including Plaintiff, after learning that their mortgages had been placed into forbearance noticed that their credit scores had declined as a result of Wells Fargo's illegal actions.

**H.    Plaintiff Brian Echard**

69.    Plaintiff Brian Echard has a mortgage serviced by Wells Fargo. Wells Fargo collects payments and performs services for Mr. Echard's mortgage secured to his primary residence located in Westerville, Ohio.

70.    Mr. Echard is a military veteran. He began his military career as an Army ROTC cadet. After graduating from college in 1996, he was commissioned as second lieutenant in the Army Reserves. In 2001, he was considering ending his military career at the end of his eight-year contractual obligation to the U.S. Army. However, as a result of the terrorist attack on

---

[22] https://www.cnbc.com/2020/05/12/coronavirus-some-homeowners-getting-mortgage-bailouts-by-mistake.html (last visited January 27, 2021).

COMPLAINT – CLASS ACTIONJURY DEMAND - 17

September 11, 2001, he chose to remain in the military and commit to accepting a company commander role. Mr. Echard and his unit were mobilized in 2003 and deployed to Iraq in 2004, where they spent 385 days. His unit was the last unit in Operation Iraqi Freedom II to leave the theater of war. Mr. Echard transitioned back to civilian life in 2005 after returning from deployment.

71.    Mr. Echard's mortgage is a VA backed mortgage.

72.    Around March 31, 2020, Mr. Echard submitted an inquiry to Wells Fargo to ask about payment deferment options, as he was concerned about his future financial security in light of the pandemic.

73.    On March 31, 2020, Wells Fargo responded via email encouraging Mr. Echard to "view the self-service options available for your account on wellsfargo.com or through the Wells Fargo Mobile app . . . ." Despite the assurance that Wells Fargo gives to military borrowers, it offered him no "support." It did not explain to him the rights of military borrowers. It did not connect him to the supposed "dedicated team" that was supposed to help military borrowers attain sustainable homeownership.

74.    Sometime between April 2 and April 8, 2020, Mr. Echard logged into his Wells Fargo account on the Wells Fargo website. During that website visit, Mr. Echard did not knowingly agree to a forbearance. As a former bank employee, he understands the significance of a forbearance and would not have knowingly signed up for forbearance on his mortgage. Yet, that website visit caused Wells Fargo to place him into forbearance.

75.    On April 8, 2020, Mr. Echard received a letter from Wells Fargo which confirmed his "short-term payment relief." The three-page letter uses the term "payment relief" and again does not use the term "forbearance."

76.     On July 21, 2020, Mr. Echard learned he was in forbearance when he attempted to refinance his mortgage through NewDay USA and was denied.

77.     On August 14, 2020, Mr. Echard received a letter from Wells Fargo. The cover sheet to this letter stated, "Due to the COVID-19 crisis, we've provided you with short-term payment suspension (forbearance). We are legally required to send you the enclosed letter. This letter is for your <u>information only</u>." (emphasis in original). This letter was specifically "For customers with VA loans." It also states, "We would also like to notify you of the availability of homeownership counseling, and any rights you or your dependents have under the Servicemembers Civil Relief Act." Thus, it is clear that Wells Fargo understood that Mr. Echard was a military borrower.

78.     On September 9, 2020, Mr. Echard received a letter from Wells Fargo in response to a complaint, stating, "We apologize for any confusion this process may have caused you." The letter contains inconsistencies. On the one hand it states, an 'account in forbearance' code on his credit report "does not affect your FICO credit score." But it acknowledged that "the fact that your account is in forbearance may affect your ability to qualify for new credit or refinance."

79.     After Mr. Echard learned that his account had been wrongfully placed in forbearance, he resumed payments on his mortgage. However, Wells Fargo failed to properly (1) apply those payments to the mortgage; (2) report those payments to credit agencies; or (3) calculate information on subsequent periodic payments.

80.     On December 1, 2020, Mr. Echard's FICO Score 8 dropped by at least 74 points from 747 to 673.

81.     Because of the reduction in Mr. Echard's FICO Score, he has been unable to qualify for the best refinancing rates.

1      **I.      Class Action Allegations**

2           82.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(3) on

3      behalf of himself and all others similarly situated. He, along with other class members who may

4      be named as class representatives at the time a motion is filed to certify a proposed class, will

5      represent the following classes:

6           **Nationwide Military Class**:

7           All military customers with a mortgage loan serviced by Wells Fargo whose mortgage
       was placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their
8      informed and lawful consent.

9           **Nationwide Class:**

10          All customers with a mortgage loan serviced by Wells Fargo whose mortgage was placed
       into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed and
11     lawful consent.

12          **Ohio Class:**

13          All Ohio customers with a mortgage loan serviced by Wells Fargo whose mortgage was
       placed into Wells Fargo's COVID-19 Mortgage Forbearance Program without their informed
14     and lawful consent.

15          83.     <u>Numerosity</u>- Members of each of the three proposed classes are so numerous that

16     joinder of all members is impracticable. The disposition of their claims in a class action will

17     provide substantial benefits to both parties and the Court. Upon information and belief,

18     Defendants, either directly or through affiliated entities, are in possession of the names and

19     addresses of all class members. While the exact number of Class Members remains unknown at

20     this time, upon information and belief, there are thousands of putative Class Members

21     throughout the United States who are generally ascertainable through discovery. The information

22

23

24

currently known to Plaintiff that Wells Fargo has received at least 1,600 complaints is already sufficient to support the numerosity requirement for a class action.[23]

84.     Class treatment is particularly appropriate here because the national presence of Defendants means that they conduct business in every jurisdiction in the United States. Further, this matter involves multiple federal statutes which were extensively and harmfully misapplied by Defendants.

85.     <u>Commonality</u>- This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    a.   Whether Defendants improperly applied the SCRA to Nationwide Military Class Members mortgage accounts;

    b.   Whether Defendants owed and breached duties owed to the Nationwide Military Class, including the duty of good faith and fair dealing and/or fiduciary duties;

    c.   Whether Wells Fargo negligently or intentionally enrolled customers in forbearance programs without their informed consent;

    d.   Whether Wells Fargo's actions or inactions violated the consumer protection statutes invoked herein;

    e.   Whether the Plaintiff and putative class were damaged by Wells Fargo's conduct and, if so, the appropriate amount of damages;

---

[23] https://www.bankingdive.com/news/wells-fargo-forbearance-mortgage-payments/582284/ (last visited January 27, 2021).

f.    Whether, because of Wells Fargo's misconduct, Plaintiff and the putative Class Members are entitled to equitable and declaratory relief, and if so, the nature of such relief;

86.    Typicality- The representative Plaintiff's claims are typical of the claims of members of the Classes. Plaintiff and all the members of the Classes have been injured by the same wrongful practices of Wells Fargo. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of members of the Classes and are based on the same legal theories.

87.    Adequacy- Plaintiff will fully and adequately assert and protect the interests of the Classes, and has retained class counsel who are experienced and qualified in prosecuting class actions, and in particular, class actions brought under the SCRA. Neither the Plaintiff nor his attorneys have any interests contrary to or in conflict with the Classes.

88.    Predominance and Superiority- A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class Members are likely in the millions of dollars, the individual damages incurred by each Class Member are too small to warrant the expense of individual suits. The likelihood of individual Class Members prosecuting their own separate claims is remote, and even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Moreover, active duty servicemembers who are part of the Nationwide Military Class and who are deployed do not have the time or resources to undertake individual litigation from their deployment.

89.    The nature of this action and the nature of laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to

afford relief to Plaintiff and the Class Members for the wrongs alleged because Wells Fargo would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

## V.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith and Fair Dealing**

90.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

91.    Plaintiff brings this claim on behalf of himself and all three classes.

92.    Plaintiff, the Class Members, and Wells Fargo were parties or beneficiaries to contracts that contain an implied covenant of good faith and fair dealing. The implied covenant obligates the parties to cooperate so that each party may obtain the full benefit of performance of the contract. The duty of good faith and fair dealing means that parties may not interfere with or fail to cooperate in the other party's performance. Neither party may engage in conduct that impairs or prevents the other party from enjoying the benefits of the contract or engage in conduct that prevents the other party from performing under the contract.

93.    Wells Fargo owed the Nationwide Military Class members an additional duty of good faith, as these borrowers are entitled to special protections for VA backed loans, under the

SCRA, and additional rights and care under Wells Fargo's own promises made to military borrowers.

94.     Wells Fargo knows which of its customers are military borrowers and knows that such military borrowers are entitled to additional rights and care.

95.     Military borrowers have a reasonable expectation that Wells Fargo will take additional care to inform them of their rights and options before placing them into a program that will negatively impact their financial status and their ability to avoid foreclosure. Military borrowers received such promises of care from Wells Fargo and are parties to a contract that requires Wells Fargo to take additional care.

96.     By failing to meet its obligations of candor and care, and then placing Plaintiff and Class Members in forbearance without their informed and legal consent, Wells Fargo frustrated and interfered with their ability to perform under the contract and failed to cooperate with the Class Members' performance of their contracts.

97.     No reasonable party would expect that Wells Fargo would put their mortgage into forbearance without their informed and legal consent. Military borrowers have additional reasons to believe this would not occur.

98.     Wells Fargo engaged in conduct that was contrary to the spirit of the contracts and the Class Members' rights thereunder. Wells Fargo lacked diligence in performing its duties, acted recklessly in its servicing of the Class Members' mortgages, and abused its power by placing loans in forbearance without informed and legal consent for its own interest.

99.     By its actions, Wells Fargo engaged in conduct that was contrary to the spirit of the contracts, lacked diligence, and constituted an abuse of its power.

100.     Wells Fargo knew, reasonably should have known, or recklessly disregarded their duty to treat Plaintiff and Class Members fairly and deal with them in good faith.

101.    Wells Fargo's negligence and breach of duties was the proximate cause of damages sustained by the Plaintiff and the Classes.

102.    Plaintiff and Class Members' damages include, but are not limited to, damage to their credit including increased borrowing costs, increased interest accrued as a result of the forbearance, and an inability to refinance while in forbearance.

## SECOND CAUSE OF ACTION

### Breach of Fiduciary Duty

103.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

104.    Plaintiff brings this claim on behalf of himself and the Nationwide Military Class.

105.    Defendants did not have a typical arms-length lender/borrower relationship with Plaintiff and the Nationwide Military Class Members. In the unique facts of this case, Defendants took on a role of fiduciary to the Plaintiff and the Nationwide Military Class.

106.    The facts giving rise to the fiduciary duty include by are not limited to the following:

- Plaintiff and members of the Nationwide Military Class are afforded special protections for their VA backed loans, and SCRA eligible members of the Nationwide Class are also afforded additional protections.

- Defendants specifically marketed to servicemembers, and particularly to those servicemembers who were deployed overseas[24];

---

[24] https://www.wellsfargo.com/military (last visited January 28, 2021).

COMPLAINT – CLASS ACTIONJURY DEMAND - 25

- Defendants volunteered advice to servicemembers and their families with the intent that Defendants would become their trusted advisor on financial and non-financial matters. The website for Defendants' proprietary program, wellsfargo.com/military, states, for example: "Whether you're buying or refinancing a home, responding to PCS orders, or simply researching VA loan benefits, our home financing specialists are here to support you." Defendants touted themselves as a source of trusted information for servicemembers about SCRA benefits and VA backed loans.

- The SCRA reflects a Congressional determination that servicemembers cannot and should not be required to protect their own financial interests while serving full time in the U.S. military. By participating in the SCRA program and specifically stating that "we offer expanded mortgage benefits that go beyond what the SCRA requires."[25] Defendants have acknowledged this unequal relationship and taken on fiduciary duties.

107.    Defendants have breached the fiduciary duties owed to Plaintiff and the Nationwide Military Class, causing damages and entitling Plaintiff and the Nationwide Military Class to restitution and other equitable remedies.

## THIRD CAUSE OF ACTION

### Violation of the Servicemembers Civil Relief Act

108.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

_____

[25] https://www.wellsfargo.com/mortgage/manage-account/payment-help/military/ (last visited January 28, 2021).

1    109.    Plaintiff brings this claim on behalf of SCRA-eligible members of the Nationwide

2 Military Class.

3    110.    The SCRA-eligible members of the Nationwide Military Class have a private

4 right of action for violations of the SCRA pursuant to 50 U.S.C. §§ 3901 *et seq.* (formerly 50

5 U.S.C. App. §§ 501 *et seq.*).

6    111.    Putting current or recent active duty servicemembers into forbearance is counter

7 to the provision of the SCRA giving one year of security against sale or foreclosure. 50 U.S.C. §

8 3953.

9    112.    Under 50 U.S.C. § 3919, Wells Fargo may not "affect certain future financial

10 transactions." A servicemember's request for a stay, postponement, or suspension of a payment

11 of a civil obligation or liability under the SCRA may not lead to any "determination by a lender

12 or other person that the servicemember is unable to pay the civil obligation or liability in

13 accordance with its terms." 50 U.S.C. § 3919(1). Such a request also may not lead to "[a]n

14 adverse report relating to the creditworthiness of the servicemember by or to a person engaged in

15 the practice of evaluating consumer credit information." *Id*. at (3)

16    113.    Defendants violated the SCRA by placing servicemember accounts in forbearance

17 without their request or upon a request for financial assistance. 50 U.S.C. § 3919(1).

18    114.    Defendants also violated the SCRA when they created a note on the Nationwide

19 Military Class Members' credit reports that the accounts were in forbearance, and when they

20 failed to accurately report mortgage payments made. 50 U.S.C. § 3919(3).

21                          **FOURTH CAUSE OF ACTION**

22                              **Breach of Contract**

23    115.    Plaintiff incorporates each and every allegation contained in the preceding

24 paragraphs as if set forth again herein.

116.    Plaintiff brings this claim on behalf of himself and all three classes.

117.    A unilateral change of a contract constitutes a breach of the contract. By unilaterally placing Plaintiff and Class Member mortgage loans in forbearance without their consent, Wells Fargo breached its contracts.

118.    Unilaterally placing a mortgage into forbearance, without lawful consent, constitutes a breach of contract.

119.    Plaintiff and Class Members have been damaged by Defendants' breach of contract in an amount to be proven at trial.

## **FIFTH CAUSE OF ACTION**

### **Fraud**

120.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

121.    Plaintiff brings this action on behalf of himself and all three classes.

122.    Wells Fargo made material omissions of fact in failing to disclose to Plaintiff and Class Members that it had placed their loans into forbearance without their informed and legal consent.

123.    Wells Fargo also made material omissions of fact in failing to disclose that a customer's account would be placed into forbearance by clicking a button on the Wells Fargo website that made no mention of forbearance.

124.    Plaintiff and Class Members detrimentally relied upon Wells Fargo's material omissions of fact when Wells Fargo did not inform Plaintiff and Class Members promptly that their accounts had been placed in forbearance and Plaintiff and Class Members did not challenge the forbearance. Where Wells Fargo did inform Plaintiff and Class Members after the fact that accounts had been placed into forbearance, that notice was insufficient to actually place these

customers on notice. Moreover, when Plaintiff and Class Members continued to make monthly mortgage payments after learning of the forbearance status, they did so with the understanding and expectation that doing so would result in these loans being serviced in the ordinary course of business.

125.    Plaintiff's and Class Member's reliance on Wells Fargo's material omissions of fact were justified and reasonable, as Plaintiff and Class Members had no basis to assume and were not on notice that Wells Fargo would defraud them by placing their loans into forbearance status without authorization or informed consent. Further, no common law, statute, or other agreement among Plaintiff and Class Members and their mortgage lender and/or Wells Fargo authorized Wells Fargo to place these borrowers' loans into forbearance without their informed consent.

126.    Plaintiff and Class Members were injured by Wells Fargo's material omissions of fact and fraudulent placement of their loans into forbearance status, experiencing credit damage, and inability to refinance at historically low rates, loss of access to new credit and existing credit cards and home equity lines of credit, reputational damage, frustration, and various out-of-pocket costs and other pecuniary damages and general damages.

## SIXTH CAUSE OF ACTION

### Violations of Truth in Lending Act, 15 U.S.C. § 1601 et seq. (TILA)

127.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

128.    Plaintiff brings this claim on behalf of himself and all three classes.

129.    12 C.F.R. § 226.36(i) prohibits a servicer of a consumer credit transaction secured by a consumer's principal dwelling from failing to "credit a payment to the consumer's loan

1   account as of the date of receipt, except when a delay in crediting does not result in any charge to

2   the consumer or in the reporting of negative information to a consumer reporting agency . . .”

3       130.    12 C.F.R. § 1026.36(c)(1) prohibits servicers of a closed-end consumer credit

4   transaction, secured by a consumer's principal dwelling, from failing to credit a periodic

5   payment to the consumer's loan account as of the date of receipt, with some exceptions not

6   applicable here.

7       131.    Wells Fargo has failed to credit periodic payments to Plaintiff and other Class

8   Members' loan accounts as of the date their periodic payments were received.

9       132.    Pursuant to 12 C.F.R. § 1026.41, a servicer of a closed-end consumer credit

10  transaction secured by a dwelling (a "mortgage loan") shall provide the consumer, for each

11  billing cycle, a periodic statement meeting specifically enumerated requirements, including but

12  not limited certain details related to the amount due, an explanation of the amount due, and a past

13  payment breakdown.

14      133.    Defendants violated 12 C.F.R. § 1026.41 by providing periodic statements on

15  mortgage loans to Plaintiff and other Class Members which do not conform to the timing and

16  structure required, and which inaccurately reflect and/or omit information required by the

17  regulation, including information related to forbearance and its effects.

18      134.    TILA, 15 U.S.C. § 1640, provides a private right of action for violations of these

19  provisions, which includes suits against entities that violate TILA and previously owned the loan

20  obligation. *See* 15 U.S.C. § 1640(f).

21      135.    Wells Fargo has demonstrated a pattern and practice of failing to comply with

22  Regulation Z because Wells Fargo has engaged in a practice of placing borrowers in unwanted

23  and unauthorized forbearance agreements on a nation-wide basis, failing to property credit

24  payments, and failing to provide accurate and legal periodic statements.

136.     As a proximate result of Wells Fargo's unlawful actions, Plaintiff and Class Members have been injured.  Plaintiff and Class Members have suffered credit damage, loss of access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages.

## SEVENTH CAUSE OF ACTION

### Violations of the Real Estate Settlement Procedures Act (RESPA)

137.     Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

138.     Plaintiff brings this claim on behalf of himself and all three classes.

139.     12 C.F.R. § 1024 imposes certain requirements on Defendants, including procedures for loss mitigation and requirements related to applications for loan modifications, violations of which are enforceable under Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(f), and 15 U.S.C. § 1640.  *See also*, 12 C.F.R. § 1024.41(a).

140.     Wells Fargo has violated 12 C.F.R § 1024, including but not limited to the following violations:

- Wells Fargo has failed to provide Plaintiff and Class Members notices as required by 12 C.F.R. § 1024.41;

- Wells Fargo has misrepresented the status of the review of loss mitigation applications and requests submitted by Plaintiff and Class Members, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has acknowledged yet failed to properly and timely evaluate and respond to Plaintiff's and Class Members' completed loss mitigation applications, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to properly advise, inform and assist Plaintiff and Class Members of curative actions including the right to appeal any denials, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has deceptively placed Plaintiff and Class Members into their "COVID-19 Forbearance Plan" without informed prior consent or approval, in violation of 12 C.F.R. § 1024.41;

- Wells Fargo has failed to maintain continuity of contact for Plaintiff and Class Members, in violation of 12 C.F.R. § 1024.40;

- Wells Fargo failed to maintain a system to "advise borrowers how to cure delinquencies [and] protect their … credit rating," in violation of 38 CFR Sc. 36.4278.

141.    Wells Fargo has placed Plaintiff's and other Class Members' mortgage loan accounts into forbearance and/or extended existing forbearance periods without Plaintiff's and Class Members' knowledge, informed consent or approval in violation of the Real Estate Settlement Procedures Act.

142.    Wells Fargo has failed to apply Plaintiff's and Class Members' monthly mortgage payments as of the date they came due and failed to report publicly that payments made by Plaintiff and Class Members were received and applied.

143.    Wells Fargo has demonstrated a pattern and practice of failing to comply with Regulation X, and failing to comply with related loss mitigation rules, because Wells Fargo has engaged in a practice of placing borrowers in unwanted and unauthorized forbearance agreements on a nation-wide basis.

144.    As a proximate result of Wells Fargo's unlawful actions, Plaintiff and Class Members have been injured.  Plaintiff and Class Members have suffered credit damage, loss of

access to credit, reputational damage, frustration, outrage, and various other pecuniary and general damages.

## EIGHTH CAUSE OF ACTION

### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (FCRA)

145.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

146.    Plaintiff brings this claim on behalf of himself and all three classes.

147.    Plaintiff Echard is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c). Wells Fargo is a "furnisher" of consumer information as defined by 12 CFR. 1022.41(c) and as described throughout the Fair Credit Reporting Act ("FCRA").

148.    Wells Fargo regularly reports consumer account information to the credit reporting agencies for inclusion in credit reports.

149.    Wells Fargo willfully violated 15 U.S.C. § 1681s-2 by informing credit agencies that Plaintiff and Class Members' mortgage accounts were in forbearance when those consumers did not make affirmative, legal, or informed requests to be placed into forbearance.

150.    Wells Fargo also willfully violated 15 U.S.C. § 1681s-2 by failing to adequately investigate and correct inaccurate credit reporting information with the credit reporting agencies where Plaintiff and class members made mortgage payments.

151.    Wells Fargo knew, or should have known, that Plaintiff and the Class Members did not request or affirmatively and legally consent to the mortgage loan forbearances that Wells Fargo reported to the credit reporting agencies.

152.    Wells Fargo knew, or should have known, that Plaintiff and the Class Members had made mortgage payments after being placed into forbearance, and that these mortgage payments should be reported to credit agencies.

153.    The forbearance notation on the Class Members' credit reports clearly indicates to potential creditors or other third parties that the class members experienced some sort of financial hardship. These forbearance notations adversely affect class members' ability to obtain credit.

154.    Failing to report payments made on Plaintiff and Class Members' mortgage accounts to credit agencies negatively affected these consumers credit scores.

155.    Wells Fargo has breached its duties as set forth in 15 U.S.C. § 1681s-2 by failing to adequately investigate and fully correct inaccurate credit reporting information with the credit reporting agencies following Plaintiff's dispute of the credit reporting errors or Plaintiff's informing Wells Fargo of the fraudulent placement of the account in forbearance.

156.    Wells Fargo knew that the presence of the forbearance notations in the Class Members' credit reports would damage the Class Members' ability to obtain new credit, which may be essential to a consumer's daily life.

157.    Wells Fargo's failure to report its receipt of payments made by Plaintiff and the Class Members during the period in which Wells Fargo improperly furnished information to the Credit Reporting Agencies indicating that their loans were in forbearance status also adversely affects Plaintiff's and the Class Members' ability to obtain credit, including but not limited to preventing and/or significantly impeding borrowers' ability to refinance their home mortgage loans and/or to borrow against the equity in their homes.

158.    Wells Fargo failed to promptly delete, modify, or block reporting of inaccurate, incomplete, or unverifiable information in response to each complaint raised by Plaintiff and the Class Members.

159.    Wells Fargo failed to fully correct the information it supplied to the Credit Reporting Agencies regarding Plaintiff's and the Class Member's accounts.

160.    Plaintiff and the Class Members have incurred actual damages and have suffered physically, mentally, and emotionally as a result of Wells Fargo's willful violations of the Fair Credit Reporting Act.

161.    Based on Wells Fargo's violations of 15 U.S.C. § 1681s-2, Plaintiff and the Class Members are entitled to actual damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1681o.

162.    Moreover, as a result of each and every negligent violation of the FCRA, Plaintiff and the Class Members are entitled to statutory damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o.

163.    Plaintiff and the Class Members are also entitled to statutory damages, punitive damages, and reasonable attorneys' fees for each of Wells Fargo's willful violation of the FCRA pursuant to 15 U.S.C. § 1681n(a).

## NINTH CAUSE OF ACTION

### Unjust Enrichment

164.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

165.    Plaintiff brings this claim on behalf of himself and all three classes.

166.    Plaintiff and the Class Members have conferred a benefit upon Wells Fargo which received benefits by placing Plaintiff and Class Member's loans into forbearance without their informed and legal consent. By placing Plaintiff's and Class member's mortgages in forbearance, Wells Fargo continued to hold and service those mortgage loans, preventing Plaintiff and Class members refinancing with another institution, and thus increasing the value of the mortgage servicing rights.

167.    As a result, the Plaintiff and Class members are entitled to restitution, disgorgement, or both, of the benefits Wells Fargo has unjustly retained, in an amount to be proven at trial.

**TENTH CAUSE OF ACTION**

**Negligence**

168.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

169.    Plaintiff brings this claim on behalf of himself and all three classes.

170.    Defendants, as lenders, owe their borrowers a duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower.

171.    Defendants owed Plaintiff and the Nationwide Military Class an additional duty of care as these customers are military customers and veterans who are entitled to special protections for VA backed loans and under the SCRA.

172.    Defendants breached their duty of care to Plaintiff and the Class Members by enrolling Plaintiff and the Class Members in the forbearance program without their informed and legal consent.

173.    Defendants further breached their duty of care to Plaintiff and the Class Members by violating the SCRA, TILA, RESPA, and FCRA.

174.    Defendants further breached their duty of care to Plaintiff and the Class Members by making misrepresentations and/or omissions on their website regarding the consequences of clicking a button on the borrower's homepage to "defer" payments.

175.    And finally, Defendants also breached their duty of care after illegally enrolling customers in the forbearance program by (1) failing to properly apply payments to the mortgage;

(2) failing to properly report payments actually made to credit agencies; and (3) failing to provide accurate and legally sufficient periodic statements.

176.    Defendants knew, reasonably should have known, or recklessly disregarded their duty to treat Plaintiff and the Class Members fairly and deal with them in good faith.

177.    Defendants' negligence and breach of their duties was the proximate cause of damages sustained by the Plaintiff and the Class Members.

## ELEVENTH CAUSE OF ACTION

### Violation of the Ohio Deceptive Trade Practices Act

178.    Plaintiff incorporates each and every allegation contained in the preceding paragraphs as if set forth again herein.

179.    Plaintiff brings this claim on behalf of himself and the Ohio Class.

180.    Ohio's Deceptive Trade Practices Act ("DTPA"), Ohio Revised Code §§ 4165 *et seq.* prohibits deceptive trade practices.

181.    Wells Fargo is a "person" as defined by Ohio Revised Code § 4165.01(D)

182.    The DTPA provides in part that a "person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person . . . represents that goods or services have . . . characteristics . . . , uses, [or] benefits . . . that they do not have." ORC § 4165.02(A)(7).

183.    Wells Fargo violated the statute when it falsely represented services available for mortgage debt assistance which it did not provide.

184.    For example, Wells Fargo deceptively represented on its website that it had services for assistance for mortgage relief, when in fact it was deceptively and without authorization, putting accounts of those inquiring about relief services into forbearance.

185.    Wells Fargo deceived Plaintiff and members of the Ohio class when it claimed to have relief programs it did not have.

186.    As a direct result of Wells Fargo's deceptive practices, Plaintiff and class members have suffered and will continue to suffer actual damages.

## **PRAYER FOR RELIEF**

On behalf of themselves and all other persons similarly situated, Plaintiff respectfully prays for the following relief:

a.    An Order certifying the class, appointing the named Plaintiff as class representative and Plaintiff's attorneys as class counsel;

b.    An award of declaratory relief, including but not limited to a declaration that Wells Fargo's actions and business practices are unlawful and that Wells Fargo must comply with state and federal lending laws;

c.    An award of injunctive relief, including public injunctive relief permanently enjoining Wells Fargo from performing further unfair and unlawful acts as alleged;

d.    An Order requiring disgorgement of Defendants' ill-gotten gains to pay restitution to Plaintiff and all members of the class;

e.    An award of statutory, compensatory, consequential, and punitive damages;

f.    An award of treble damages insofar as they are allowed by applicable laws;

g.    All costs of prosecuting this action, including attorneys' fees and expert fees as may be allowable under applicable law;

h.    An award of pre-and post-judgment interest;

i.      The imposition of a constructive trust containing all assets, funds, and property derived from Defendants' wrongful acts, with Defendants serving as constructive trustees for the benefit of Plaintiff and class members;

j.      An accounting of all assets, funds, revenues, and profits received and retained by Defendants as a result of their improper actions;

k.      Award appropriate individual relief as requested above; and

l.      Grant such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demand a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 28th day of January, 2021.

Smith & Lowney, PLLC

By: _s/Knoll Lowney_
Knoll Lowney, WSBA # 23457
_s/Alyssa Englebrecht_
 Alyssa Englebrecht, WSBA #46773
_s/Meredith Crafton_
Meredith Crafton, WSBA # 46558
_s/Marc Zemel_
March Zemel, WSBA #44325
_s/Savannah Rose_
Savannah Rose, WSBA #57062
Smith & Lowney, PLLC
2317 E. John Street, Seattle, WA 98112
Tel: (206) 860-2883; Fax: (206) 860-4187
Email: knoll@smithandlowney.com
alyssa@smithandlowney.com
meredith@smithandlowney.com
marc@smithandlowney.com
savannah@smithandlowney.com